IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND | ) ) ) | 11 C 2775 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| NAGEL TRUCKING & MATERIALS, INC. | ) ) | Hon. Charles R. Norgle |
| Defendant. | ) ) | |

## OPINION AND ORDER

Before the Court is Plaintiff Trustees of the Suburban Teamsters of Northern Illinois Pension Fund's ("Fund") motion to strike Defendant Nagel Trucking & Materials, Inc.'s ("Nagel") affirmative defenses and for judgment on the pleadings compelling interim withdrawal liability payments. For the following reasons, the Fund's motion is granted and judgment is entered pursuant to Federal Rule of Civil Procedure 12(c).

## I. INTRODUCTION

### A. Facts

The Fund sues Nagel under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1301-1461, seeking withdrawal liability payments. The following facts are undisputed.

Nagel is an Illinois corporation engaged in an industry affecting commerce. Nagel and the International Brotherhood of Teamsters ("Union") were parties to multiple collective bargaining agreements ("CBA"), the most recent of which covered the period

1

May 1, 2003, through April 30, 2006 ("2006 CBA"). The CBA required Nagel to submit monthly welfare and pension contributions to the Fund.

Upon expiration of the 2006 CBA, Nagel and the Fund commenced negotiations for a successor agreement. Those negotiations proved difficult and ultimately led the Fund to sue for unpaid contributions under ERISA. See Trs. of the Suburban Teamsters of N. Ill Welfare & Pension Funds v. Nagel Trucking & Materials, Inc., No. 09 C 4411 (N.D. Ill. Sept. 20, 2011) (Gettleman, J.) [hereinafter Nagel I]. A central dispute in Nagel I was whether the parties entered into a CBA for the period May 1, 2006, through April 30, 2010. On September 20, 2011, after over two years of litigation, Judge Gettleman found that Nagel and the Fund did not enter into a CBA for that period. Id. The 2006 CBA, therefore, is the last CBA between the parties.

Nagel continued to pay welfare and pension contributions to the Fund into 2010. Nagel's final payment to the Fund, for December 31, 2009, was made in March 2010. On November 14, 2010, Nagel received from the Fund a notice and demand for payment of $381,177 in withdrawal liability ("Notice"). The Notice advised Nagel that it was required to discharge its liability in twenty quarterly payments, beginning with a $22,477 payment on November 20, 2010. Nagel admits that it has not made any quarterly payments to the Fund. Answer ¶¶ 18-20. Seeking to challenge the merits of the alleged withdrawal liability in accordance with 29 U.S.C. § 1401(a)(1)(A), Nagel "timely requested arbitration" on or about March 28, 2011. Compl. ¶ 25.

The parties dispute the date upon which Nagel completely withdrew from the Fund. According to the Fund, Nagel completely withdrew during the plan year ending December 31, 2010. Nagel's first affirmative defense, by contrast, alleges that the

correct date of its withdrawal is during the plan year ending December 31, 2006, the expiration year of the 2006 CBA.

**B. Procedural History**

The Fund filed this lawsuit to collect past due withdrawal liability payments on April 26, 2011, approximately one month after Nagel requested arbitration. The Fund filed the instant motion on July 29, 2011. On September 20, 2011, six days after this motion was fully briefed, Judge Gettleman found that Nagel and the Fund did not enter into a CBA for the period May 1, 2006, through April 30, 2010. Nagel Trucking & Materials, Inc., No. 09 C 4411 (N.D. Ill. Sept. 20, 2011). On November 8, 2011, the Court granted each party the opportunity to file an additional brief addressing the significance of Nagel I on this case. The parties filed their additional briefs on November 21, 2011.

## II. DISCUSSION

**A. Standard of Decision**

Rule 12(c) permits judgment based on the pleadings alone, which includes the complaint, the answer, and any written instruments attached as exhibits. Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007). The Court reviews Rule 12(c) motions "by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Buchanan-Moore v. City of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted). "Where the plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth., 378 F.3d 596, 600 (7th Cir. 2004) (citations and quotation omitted). "The Court may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from the prior proceedings."

3

Hernandez ex rel. Gonzalez v. Tapia, No. 10-CV-4124, 2010 WL 5232942, at *3 (N.D. Ill. Dec. 15, 2010) (citing Gen. Elec. Capital Corp. v. Lease Res. Corp., 128 F.3d 1074, 1081-82 (7th Cir. 1997)); see also Baker v. Potter, 175 F. App'x 759, 762 (7th Cir. 2006) (holding on a Rule 12(c) motion that the district court properly took judicial notice of the decision by a judge in a previous lawsuit). The Court takes judicial notice of Judge Gettleman's opinions and orders in Nagel I.

## B. The Fund's Motion for Judgment on the Pleadings

To Nagel, Judge Gettleman's ruling that the parties did not enter into a CBA for the period May 1, 2006, though April 30, 2010, means that Nagel had no "contractual legal obligation" to contribute to the Fund during that period. Nagel argues that a complete withdrawal occurred as of May 1, 2006, and that as of that date any alleged withdrawal liability attached. For this reason, Nagel argues that the Fund's claim is "fictitious." In response, the Fund argues that Nagel's "obligation to contribute" extends well beyond the expiration of the 2006 CBA and, in any event, the date of withdrawal is a question for the arbitrator, not this Court. Under the "pay now, fight later" regime of the MPPAA, the Fund argues that, at minimum, all past due interim withdrawal payments must be paid immediately. The Fund is correct.

### 1. Statutory Context

When an employer withdraws from a multi-employer plan, it incurs withdrawal liability under the MPPAA. See 29 U.S.C. §§ 1381, 1391. "Congress enacted the MPPAA to address the risk of insolvency that arises when an employer withdraws from a pension plan. When that happens, the plan must ensure that it is adequately funded to provide benefits to workers as promised." Nat'l Shopmen Pension Fund v. Disa Indus.,

Inc., 653 F.3d 573, 575 (7th Cir. 2011) (citation omitted). The MPPAA protects the solvency of the plan by making the withdrawing employer "'liable for an amount of money designed to cover the employees' share of the vested, but unfunded, benefits.'" Id. (quoting Robbins v. Lady Baltimore Foods, Inc., 868 F.2d 258, 261 (7th Cir. 1989)); see also 29 U.S.C. §§ 1381, 1391.

To collect withdrawal liability, a plan must first determine the amount owed by a withdrawing employer, 29 U.S.C. § 1382, and then send the employer a notice and demand for payment, id. § 1399(b)(1). The employer may ask the plan to review its assessment, id. § 1399(b)(2), and may contest the plan's assessment of its liability through arbitration, id. § 1401(a)(1).

When an employer requests arbitration, as Nagel has done here, the MPPAA establishes a "pay now, fight later regime" in which "an employer is almost always required to make payments while it . . . pursues arbitration." Nat'l Shopmen, 653 F.3d at 576; see also 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review. . . ."). "Congress intentionally drafted the interim payment provisions of the MPPAA to give funds very broad power to demand interim payments." Cent. States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc., 272 F.3d 1000, 1006 (7th Cir. 2001). "This is to ensure that the pension plan remains solvent while the parties resolve their dispute – a process that can take many years." Nat'l Shopmen, 653 F.3d at 576. "If [the employer] wins the arbitration he will get back whatever he has paid but the rule is pay first,

arbitrate after." Cent. States, Se. & Sw. Areas Pension Fund v. Lady Baltimore Foods, Inc., 960 F.2d 1339, 1341 (7th Cir. 1992).

If the employer defaults by failing to make the appropriate payments, matters progress in one of two ways. If the employer fails to make payments while arbitration is pending (known as interim withdrawal liability payments), the plan may file suit to collect on the interim payments, but not the entire amount. Nat'l Shopmen, 653 F.3d at 576. If the employer fails to make demanded payments and also fails to seek arbitration, the plan may sue for accelerated payments. Id. (citing 29 U.S.C. §§ 1399(c)(5), 1401(b)(1)).

Finally, attorneys' fees, costs, liquidated damages, and interest are "'mandatory add-ons in (successful) suits to enforce' a delinquent employer's duty to contribute [interim withdrawal liability payments]." Cent. States, Se. & Sw. Areas Pension Fund v. Murphy Bros., Inc., 772 F. Supp. 2d 918, 923 (N.D. Ill. 2011) (quoting Cent. States, Se. & Sw. Areas Pension Fund v. Slotky, 956 F.2d 1369, 1377 (7th Cir. 1992)); see also 29 U.S.C. §§ 1132(g), 1451(b).

### 2. *The Disputes in this Case Must be Resolved Through Arbitration*

Disputes arising under the MPPAA must be resolved through arbitration. Section 1401 of the MPPAA provides:

> Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration.

29 U.S.C. § 1401(a); see also Robbins v. Admiral Merch. Motor Freight, Inc., 846 F.2d 1054, 1057 (7th Cir. 1988) ("Very simply, § 1401(a) requires arbitration of any dispute regarding a determination made under §§ 1381-1399.").

6

As set forth above, the parties dispute the date of Nagel's withdrawal from the Fund. This dispute is governed by §§ 1383 and 1392, which are expressly included among the sections for which arbitration is required. See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1014 (7th Cir. 2001) ("The merits of the dispute regarding withdrawal liability, including the date of its incurrence, must be referred to arbitration." (citing 29 U.S.C. § 1401(a)(1))); Lady Baltimore Foods, Inc., 868 F.2d at 264 ("[T]he question of an employer's withdrawal date from a pension fund is one which is subject to mandatory arbitration under 29 U.S.C. § 1401(a)(1)." (citing Admiral Merch. Motor Freight, Inc., 846 F.2d at 1056-57)); Steiner Elec. Co v. Cent. States, Se. & Sw. Areas Pension Fund, No. 95 C 687, 1995 WL 399517, at *4 (N.D. Ill. June 29, 1995) ("The Court concludes that a 'determination made under sections 1381 through 1399,' as that phrase is used in section 1401, includes the discrete determination of the date of an employer's withdrawal from a fund pursuant to section 1383."). Thus, the plain language of § 1401(a) requires that the arbitrator, not this Court, determine Nagel's date of withdrawal.

Section 1401(a) notwithstanding, Nagel argues that Nagel I has resolved the core issue to be arbitrated such that the Fund's claim in this case is "fictitious." Def.'s Resp. to Pl.'s Mot to Strike 2. To Nagel, "[w]ith no Collective Bargaining Agreement, Nagel . . . had NO LEGAL OBLIGATION to contribute to the Funds." Def.'s Br. on the Effect of the Sept. 20, 2011 Order 2 (emphasis in original). And with no legal obligation to contribute, the Fund "had NO LEGAL RIGHT to accept contributions." Id. at 2 (emphasis in original). The Court rejects Nagel's attempt to circumvent the mandatory arbitration provisions of § 1401(a).

Under the MPPAA, an employer is not liable to a multiemployer pension plan for interim withdrawal liability payments unless the employer has completely withdrawn from the plan. 29 U.S.C. § 1381(a). An employer completely withdraws from a plan when, *inter alia*, it "permanently ceases to have an *obligation to contribute* under the plan." Id. § 1383(a). (emphasis added). Section 1392(a) defines "obligation to contribute" as an obligation arising "(1) under one or more collective bargaining (or related) agreements, or (2) as a result of a duty under applicable labor-management relations law." Id. § 1392(a).

There is no dispute that, pursuant to the National Labor Relations Act ("NLRA"), Nagel was required to contribute to the Fund during the pendency of negotiations for a successor agreement to the 2006 CBA. See 29 U.S.C. § 158(a). Even if Nagel is correct that it had no obligation to contribute under a CBA, under the plain language of § 1392(a)(2), it had an obligation to contribute well after the 2006 CBA expired. Nagel's attempt to hide behind Nagel I is unavailing. The disputes in this matter must be resolved through arbitration.

### 3. *Interim Withdrawal Liability Payments Required Pending Arbitration*

As set forth above, interim withdrawal liability payments must be made pending arbitration. Nagel admits that it has made no such payments. Accordingly, Nagel is ordered to make all past due interim withdrawal liability payments to the Fund as well as to make all future payments when they become due according to the schedule determined by the Fund. To the extent Nagel disputes the calculation of withdrawal liability, that dispute "*must* be resolved through arbitration." Nat'l Shopmen, 653 F.3d at 581 (emphasis in original).

The Fund's argument that the full $381,777 debt be accelerated, however, is without merit. The MPPAA provides:

> (5) In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means—
> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. § 1399(c)(5). The Fund seeks acceleration pursuant to the first kind of default, set forth in subsection (A), commonly referred to as "missed-payment default." Cent. States, Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co., 620 F.3d 766, 771 (7th Cir. 2010). Under subsection (A), when an employer timely requests arbitration – as the Fund concedes Nagel has done here – acceleration is not permitted until the arbitrator renders a decision. See 29 C.F.R. § 4219.31(c)(1) (requiring that when arbitration is timely initiated, "default as a result of failure to make any payments shall not occur until the 61st day after the last of . . . issuance of the arbitrator's decision"); see also Chi. Truck Drivers, Helpers & Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc., 125 F.3d 526, 533 (7th Cir. 1997) ("The rule that emerges from the statute and the regulation is that a fund may accelerate, but not before the arbitrator renders a decision."); Bd. of Trs. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp., 43 F.3d 852, 855 (3d. Cir. 1994) ("If an employer misses a scheduled payment, the fund may seek to collect by filing a collection action but it may not accelerate the balance during that protected arbitration period."). The Fund's reliance on

O'Neil Brothers is misplaced as that case concerns only subsection (B), commonly referred to as "insecurity default," which is not at issue here. See O'Neill Bros. Transfer & Storage Co., 620 F.3d at 771, 774.

Finally, "since ERISA treats missed interim withdrawal liabilities as delinquent employer contributions, the Fund is also entitled to recover interest on the missed payments, liquidated damages, and attorneys' fees and costs under 29 U.S.C. § 1132(g)(2)." Murphy Bros., Inc., 772 F. Supp. 2d at 922 (citing 29 U.S.C. § 1451(b)); see also Slotky, 956 F.2d at 1377 (declaring that interest, liquidated damages, and attorneys' fees are "mandatory add-ons" in successful suits to collect interim withdrawal liability payments); Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Loyal Casket Co., No. 06 C 5987, 2008 WL 938409, at *5 (N.D. Ill. Apr. 7, 2008) (same). Nagel's "interest liability accrues from the due date of each missed installment payment, and any liability for liquidated damages (either double interest or up to 20% of unpaid contributions, whichever is greater) should relate only to missed installment payments as well." Century Motor Freight, Inc., 125 F.3d at 535 (citation omitted). The Fund is instructed to file supplemental documentation establishing the amounts owed within twenty-one days of this order.

## III. CONCLUSION

For the foregoing reasons, the Fund's motion for judgment on the pleadings is granted. Nagel is ordered to make all past due interim withdrawal liability payments. Nagel is further ordered to make all future payments when they become due according to the schedule determined by the Fund. The Fund is also entitled to interest on the unpaid contributions, liquidated damages, and reasonable attorneys' fees and costs. The Fund is instructed to file supplemental documentation establishing the amounts owed within twenty-one days of this order.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: December 22, 2011